IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No.  3:11-CR-59 |
| vs. | : | Judge Thomas M. Rose |
| DEBRA PRIVRATSKY, | : | |
| | : | **RESPONSE TO GOVERNMENT'S** |
| Defendant. | : | **REPLY** |

***Bonilla* Controls the Question Presented Here: Trooper Lacked Reasonable Suspicion**

The government attempts to distinguish this case from *United States v. Bonilla*, 357 Fed. Appx. 693(6th Cir. Ohio 2009) by arguing that "the circumstances present here provide a much stronger inference of criminal activity than present in Bonilla. . . ." (Government's reply brief, p 13). In fact, the opposite is true.

Here, Government Exhibit A clearly captures the entire interaction between Trooper Simms and Ms. Privratsky. Ms. Privratsky's answers to Trooper Simms questions are not only reasonable but make perfect sense. Unless delivering a vehicle for a friend itself gives rise to reasonable suspicion,  nothing about Ms. Privratsky's interaction with Trooper Simms can remotely be seen as giving rise to reasonable suspicion.

The government's attempt to cobble together completely innocuous observations and claim they amount to reasonable suspicion only reveals the desperation of its position. For instance, the government argues that it was suspicious that the vehicle Ms. Privratsky was delivering was a newly purchased vehicle, that Ms. Privratsky was driving with only one key, and that even though the vehicle was purchased for a person who was disabled, the vehicle did not have a handicap placard.

But these factors not only perfectly fit Ms. Privratsky's description of her trip, they fit and compliment each other. Ms. Privratsky explained that she was picking up this newly purchased vehicle and delivering it to her friend's uncle. Being that this vehicle was newly purchased in Massachusetts (see government's reply brief, citing record), and was being delivered to its new owner in Nevada, it is hard to see how the Trooper could find anything suspicious about the fact that Ms. Privratsky was delivering the car with one key. Likewise, knowing that this recently purchased vehicle was being transported to the new owner in another state, it begs the question, why would the Trooper expect the vehicle to already be equipped with a handicap placard pre-delivery? It appears that these "factors" are the product of post-arrest analysis, and again, suggests that the government understands the weakness of their position in light of *Bonilla*, and are searching for reasonable suspicion where none exists. A review of the other 'factors' the government relies upon is equally revealing.

For instance, the government attempts to make something of the fact that the vehicle driven by Ms. Privratsky contained an air freshener that was in "plain view." The government does not claim that this air freshener was designed to be concealed, or otherwise explain why the "plain view" presence of one air freshener was suspicious. Here, the air freshener appears to have been used in accordance with its designed purpose – freshening the air.

Other government arguments, such as the fact that Ms. Privratsky was driving the vehicle with her hands on the wheel at the 10 and 2 position (the position taught in driver's education courses), or that her final destination was a "known drug trafficking area" – i.e., any major metropolitan area west of the Mississippi – hardly merit comment.

Here, Ms. Privratsky explained that she was a flight attendant. As such, she could fly across the country for free and pick up this newly purchased vehicle for her friend's uncle. The government

wants to make an issue out of the fact that Ms. Privratsky did not have the full name of her friend's uncle, but she explained that she had only met her friend's uncle a couple of times, and more importantly, she did give the Trooper the name of her friend without hesitation. (Govt. Exhibit A at 13:14:24).

When comparing the facts of this case with the facts of *Bonilla*, it is hard to imagine how the facts here could be found to give rise to reasonable suspicion where the facts of *Bonilla* did not. In *Bonilla*, the Defendant's explanation for his travel was far less plausible (traveling from Denver, Colorado to Columbus, Ohio for vacation in the dead of winter, with no apparent reason to do so). In addition, *Bonilla* was so nervous that he couldn't remember his passenger's last name – even though he claimed to have known her for years. *United States v. Bonilla*, 357 Fed. Appx. 693, 698-700 (6th Cir. Ohio 2009).

In contrast, and despite the Trooper's characterization of Ms. Privratsky being extremely nervous, this Court can judge for itself Ms. Privratsky's demeanor, the lack of hesitation or tremor in her voice, as well as the substance of her answers to the Trooper's questions. And, it bears repeating that a certain level of nervousness is quite natural: "[a]lthough generally included as one of several grounds for reasonable suspicion, a driver's nervousness when stopped is often common and, therefore, given little weight." *Bonilla*, 357 Fed. Appx. at 698-700 (6th Cir. Ohio 2009) (citations omitted).

**No Probable Cause for Traffic Stop**

Simms testified that the Government Exhibit A clearly shows the basis for the traffic stop. Yet this tape plainly shows Ms. Privratsky driving in a reasonable, prudent manner. This Court can see for itself that Ms. Privratsky's driving pattern utterly fails to justify the extreme violation of her Fourth Amendment Right to be free from unreasonable seizure.

The government correctly points out that an officer may conduct a traffic stop so long as "the facts and circumstances within [his] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed" *United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005).

Applying this standard to these facts, however, and it is apparent that these facts would not warrant any person of reasonable caution to belief that an offense has been or is being committed – far from it. Here, the tape speaks for itself.

The fact that the vehicle in front of Ms. Privratsky suddenly slows down and does so only after the visible presence of not one, but two marked Ohio State Trooper vehicles is a fact captured on Trooper Simms' video recorder. The tape specifically shows the following:

At 13:11:45, Trooper Simms has caught up to and is following Ms. Privratsky at a constant speed. At this time, Ms. Privratsky, the vehicle in front of Ms. Privratsky, and Officer Simms are all traveling at 67 miles per hour, based on the speed recorded by Trooper Simms' vehicle. By 13:11:50, however, a second marked State Trooper vehicle parked in the median becomes visible on the video tape. At this point, the vehicle in front of Ms. Privratsky dramatically slows her vehicle, leading both Ms. Privratsky and Trooper Simms to slow their vehicles. Within seconds (see video at 13:12:05-07), the vehicles have passed the parked State Trooper, and they have all dropped their speed from 67 down to 59 miles per hour.

This is the backdrop and context in which this Court must determine whether the Trooper had probable cause to believe Ms. Privratsky followed another vehicle more closely than is reasonable and prudent to warrant a traffic stop under 4511.34(A). It is important to note that the so-called "car length rule" does not appear in the statute. While this shorthand rule has been applied

in various traffic stop situations, it cannot take place of the plain language contained in this Ohio Statute. The Statute emphasizes that a lack of reasonableness and prudence are to be the touchstones of this traffic violation. This is most likely because the legislature recognized that there are innumerable situations in which operators of motor vehicles encounter brief periods of time when their vehicle is less than one car length for every 10 miles per hour of speed behind a vehicle in front of them.

For instance, vehicle operators frequently pass, merge, or change lanes, pulling in front of other vehicles but allowing considerably less distance between their vehicle and the vehicle they pass than would be required by the "car length rule." Is the car that has just been passed required to slam on its breaks to avoid this traffic violation? Such a requirement would not be reasonable or prudent, and such a requirement is not contemplated by Ohio Rev. Code § 4511.34(A). Or, take the case presented here, where a vehicle rapidly decelerates dropping well below the posted speed limit in front of another.[1]

In this case, Ms. Privratsky appears to have slowed her vehicle from 67 miles per hour down to 59 miles per hour in a matter of seconds, even though the speed limit was 65. From studying the videotape, this driving seems both reasonable and prudent, especially in light of the fact that the traffic was light on this straight, flat section of Interstate 70, and no road construction, foul weather or other adverse road condition existed.

**Conclusion**

Trooper Simms' testimony and the tape of the stop demonstrate that Ms. Privratsky was not traveling unreasonably close to the vehicle in front of her to justify the traffic stop. If the stop was

---

[1] Contrary to the government's claim, it does not appear that Ms. Privratsky is following too close prior to the deceleration of the vehicle in front of her. See, e.g., Government Exhibit A, at 13:11:35.

proper, Simms did not have a reasonable suspicion to abandon the purpose of the stop and continue to detain Ms. Privratsky.

For all the above stated reasons, Ms. Privratsky respectfully requests that this court issue an Order suppressing the use of any evidence obtained as a result of the illegal stop/ and or detention in this matter.

Respectfully submitted,

STEVEN S. NOLDER
FEDERAL PUBLIC DEFENDER


s/Thomas W. Anderson, Jr.
Thomas W. Anderson, Jr. (0073138)
Assistant Federal Public Defender
Fifth Third Center, Suite 490
1 South Main Street
Dayton, Ohio  45402
(937) 225-7687
Thomas_Anderson@fd.org
Attorney for Defendant
Debra Privratsky

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon Brent Tabacchi, Assistant United States Attorney, by electronic mail, this 1st day of December, 2011.

s/Thomas W. Anderson, Jr.
Thomas W. Anderson, Jr.