**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**UNITED STATES OF AMERICA,**

          **Plaintiff,**

-v-

**DEBRA PRIVRATSKY,**

          **Defendant.**

Case No. 3:11-cr-059

Judge Thomas M. Rose

---

**ENTRY AND ORDER OVERRULING PRIVRATSKY'S MOTION TO SUPPRESS (Doc. #19)**

---

On April 26, 2011, a federal Grand Jury returned a two-count Indictment charging Defendant Debra Privratsky with drug trafficking. (Doc. #8.) On July 22, 2011, Privratsky filed a Motion To Suppress all evidence seized by the Government including any statements made. (Doc. #19.)

Privratsky argues that she was stopped for a traffic violation without probable cause and that she was unlawfully seized longer than necessary to issue her a traffic violation without a reasonable suspicion that she was engaged in illegal activity. An evidentiary hearing on Privratsky's's Motion To Suppress was conducted on September 26, 2011. (Doc. #21.) The Jury Trial of this matter is set for January 23, 2012.

Following the hearing, Privratsky filed a Memorandum In Support of her Motion To Suppress. (Doc. #24.) The Government has responded. (Doc. #25.) Privratsky filed a Reply one-day late, but it will be considered. (Doc. #27.) Therefore, Privratsky's Motion To Suppress is ripe for decision.

Findings of relevant facts will first be set forth. This will be followed by an analysis of

Privratsky's Motion To Suppress. The relevant legal provisions will be set forth as part of the analysis.

## FINDINGS OF RELEVANT FACTS

On February 28, 2011, Trooper Shawn Simms, of the Ohio State Highway Patrol, was patrolling in a marked 2007 Chevy Tahoe. (9/26/11 Hearing Transcript ("Tr.") 5, 52.) Trooper Simms was on patrol on Interstate Route 70 in Preble County, Ohio, looking for criminal activity. (Id. at 5,41.) Trooper Simms was accompanied on patrol by Trooper Bierer. (Id. at 41.)

While traveling westbound on Interstate Route 70, Trooper Simms passed the vehicle Privratsky was driving. (Id. at 41-42.) Both were traveling westbound. (Id.) Privratsky was in the right lane and Trooper Simms was in the left lane. (Id.)

As Trooper Simms passed Privratsky, he noticed that she had her "arms locked out hands 10:00 to 2:00 sitting rigid in her seat, staring straight ahead." (Id. 43.) At that point, Trooper Simms made a decision to further investigate Privratsky and the vehicle she was driving. (Id. at 44.)

Trooper Simms passed the vehicle that Privratsky was driving and pulled into the median at approximately mile post 5 to watch Privratsky go by. (Id. at 44-45, 47.) At that point, Trooper Simms was looking for a traffic violation but had not yet seen one. (Id. 45-46.) However, as Privratsky passed by, Trooper Simms noticed that the vehicle that Privratsky was driving was over the right edge line. (Id. at 46.)

Trooper Simms then pulled out from the median and began to follow Privratsky. (Id. at 47.) Trooper Simms observed Privratsky following too close to the vehicle in front of her and multiple lane violations so he initiated a traffic stop. (Id. at 11.) Privratsky was cited for

following too close and was given a warning for the multiple lane violations. (Id. at 48.) At some point, prior to pulling Privratsky over, the camera in the cruiser Trooper Simms was driving was activated and the entire stop was recorded. (Id. at Ex. A.)

Trooper Simms exited his patrol vehicle and approached the passenger side of Privratsky's vehicle. (Id. at 13.) In doing so, he noticed that Privratsky's turn signal was still on (and would remain on throughout the stop). (Id.) Upon reaching the passenger side window, Trooper Simms knocked on it indicating that Privratsky should roll it down. (Id.) Privratsky immediately rolled the window down and handed her license and the registration to Trooper Simms. (Id.)

Trooper Simms noticed that Privratsky appeared to be "overly nervous," and "the license that was in her hand was shaking heavily." (Id.) Trooper Simms also had to tell Privratsky two times to roll up the driver-side window so he could hear her. (Id. at 14.) Trooper Simms also noticed that there was only one key in the ignition and there was a large air freshener sitting on the floor in the rear of the vehicle. (Id.) Trooper Simms testified that these are all indicators commonly seen in people engaged in criminal activity. (Id.)

Privratsky acknowledged that she did not own the vehicle that she was driving. (Id. at 17.) She told Officer Simms that the vehicle belonged to her friend Chris Todd's uncle. (Id.) Officer Simms asked for the uncle's name but could not understand the answer due to the traffic passing by. (Id. at 61.) Privratsky told Officer Simms that she had only met Chris Todd's uncle a couple of times and that she was driving the vehicle back to Las Vegas as a favor for Chris Todd because his uncle was handicapped. (Id. at 18, 22.) Notably, however, the vehicle Privratsky was driving did not have handicap license plates or a handicap placard and a subsequent record check

on the vehicle provided no indication that the owner was disabled. (Id. at 22-24.)

Trooper Simms then had Privratsky exit her vehicle and he placed her in the back of his patrol vehicle. (Id. at 63-64.) Trooper Simms ran Privratsky's driver's license through the LEADS system and continued to question Privratsky. (Id. at 67.) Privratsky indicated that she was a flight attendant and had recently flown into Boston where she spent several days before beginning her trip to Las Vegas. (Id. at 22-25.) Also during this time, Trooper Simms more closely examined the vehicle registration and noted that the owner had only recently purchased the vehicle. (Id. at 20-21, 26.) Finally, while Privratsky was sitting in the back of the patrol vehicle, Privratsky made several nervous giggles without being asked a question. (Id. at 27, 30.)

Trooper Simms received the LEADS information regarding Privratsky's driver's license at 13:17: 25. (Id. at 69, Ex. A.) Trooper Simms then thought he had reasonable suspicion to investigate other criminal activity. (Id. at 70-71.) At 13:18:29 Trooper Simms informed Privratsky that he had a drug dog and would be running it around the vehicle. (Id. at 31.) Privratsky responded with a "muffled okay." (Id.)

The K 9 dog immediately alerted to the presence of narcotics. (Id. at 34.) Privratsky was detained and eventually the vehicle was searched and the evidence recovered.

## ANALYSIS

### The Traffic Stop

Privratsky's first argument is that the basis for the initial traffic stop is not justified. The Government responds that Trooper Simms had probable cause to believe that Privratsky committed a traffic violation.

The Fourth Amendment forbids unreasonable searches and seizures. *Whren v. U.S.*, 517

U.S. 806, 809 (1996). The temporary stop of an automobile by police is a seizure as described in the Fourth Amendment. *Id.* Therefore, the stop of an automobile must be reasonable. *Id.*

The stop of an automobile is reasonable if the police officer had probable cause to believe that a traffic violation had occurred. *Id.* A police officer has probable cause where the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. *U.S. v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005).

Ohio law provides that the operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent. Ohio Rev. Code § 4511.34(A). Courts have interpreted this regulation to require a separation of one car length between vehicles for every ten miles per hour of speed. *U.S. v. Bonilla*, 357 F. App'x 693, 695 (6th Cir. 2009)(citing *U.S. v. Dukes*, 257 F. App'x 855, 858 (6th Cir. 2007)). Also, it is a violation of Ohio law to swerve outside of lane lines without interference or excuse. *U.S. v. Wickersham*, 344 F. App'x 155, 157 (6th Cir. 2009).

In this case, Trooper Simms observed that Privratsky was operating her vehicle at "less than two car lengths behind the vehicle in front of" the vehicle she was driving at approximately 60 miles per hour. Trooper Simms also observed Privratsky drive upon or over the right edge line. Trooper Simms' testimony is corroborated by evidence from the video camera in his cruiser. Thus, Trooper Simms had probable cause to believe that Privratsky was violating Ohio law and, as a result, had probable cause to stop Privratsky's vehicle. Finally, because Trooper Simms had probable cause, the stop of Privratsky's vehicle did not violate Privratsky's Fourth

Amendment rights.

Privratsky argues that Trooper Simms forced her to commit a traffic violation. Specifically, the presence of the police cruiser on the interstate highway caused the vehicle in front of Privratsky to slow down, which, in turn, forced her to follow that vehicle too closely. However, this argument lacks factual and legal merit.

First, the videotape establishes that Privratsky was following too closely, even before the vehicle in front of her slowed down. Second, there is no evidence that Trooper Simms caused the vehicle in front of Privratsky to slow down or intended for his presence on the interstate highway to cause that result. Third, Privratsky has not established how Trooper Simms prevented her from taking the appropriate steps to keep a safe distance from the vehicle she was following, even when it began to slow down. Finally, Privratsky's argument regarding following too closely says nothing about the other cause for making the traffic stop, driving outside of lane lines without interference or excuse.

Trooper Simms had probable cause to believe that Privratsky committed a traffic violation. The basis for making the traffic stop is justified. The traffic stop does not violate Privratsky's Fourth Amendment rights.

**The Detention**

Privratsky's second and final argument is that she was unlawfully detained. The Government responds that Trooper Simms had reasonable suspicion to expand the scope of the traffic stop.

Once the purpose of a traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and

articulable suspicion that criminal activity was afoot. *U.S. v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). Reasonable suspicion must be based upon a particularized and objective basis for suspecting the particular person of criminal activity. *U.S. v. Cortez*, 449 U.S. 411, 417-18 (1981).

When assessing reasonable suspicion, Courts are to consider all of the officer's observations and not discard those that may seem insignificant or troubling when viewed alone. *U.S. v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002). A totality-of-the-circumstances approach is used which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them…" *Id.*

In this case, the circumstances of the traffic stop, when viewed through his experience and specialized training, provided Trooper Simms with a reasonable suspicion to prolong and expand the scope of his traffic stop of Privratsky. Trooper Simms testified that he had a reasonable suspicion to continue to detain Privratsky because: she was seated in a rigid position with arms locked at 10 and 2 while driving; she committed traffic violations knowing that she was being followed by a marked cruiser; her turn signal stayed on throughout the entire traffic stop; her hands were shaking when she provided her driver's license to Trooper Simms; there was only one key in the ignition of the vehicle Privratsky was driving; Trooper Simms had to ask Privratsky twice to roll up the driver's-side window; there was a large air freshener on the floor of the vehicle Privratsky was driving; Privratsky was not the owner of the vehicle that she was driving; Privratsky said she was driving the vehicle as a favor for a friend's uncle but she was not sure of the friend's uncle's name; Privratsky said the registered owner of the vehicle was handicapped but there was no handicap license plate or placard in the vehicle; the vehicle was

recently purchased; she gave Las Vegas, known to Trooper Simms as having a high crime rate, as her destination; and she giggled nervously while sitting in Trooper Simms' cruiser. Finally, Trooper Simms has been an Ohio State Patrol officer since May 8, 1998, and a K-9 officer since September 10, 2001. During this time, he has been involved in at least 93 drug interdiction stops.

Privratsky cites case law where many of the above circumstances, standing alone, do not provide reasonable suspicion. However, none of the cases cited involve all of the above circumstances or the quantity of circumstances involved in this case. When taken alone, any one of the above circumstances may not provide reasonable suspicion. However, when all are considered together with his training and experience, Trooper Simms had reasonable suspicion to prolong and expand the scope of his traffic stop of Privratsky.

## CONCLUSION

Privratsky has not shown that the basis for the initial traffic stop violated her Fourth Amendment rights. She has also not shown that she was unlawfully detained. Therefore, Privratsky's Motion To Suppress (doc. #19) is OVERRULED.

**DONE** and **ORDERED** in Dayton, Ohio this 5th day of December, 2011.

**s/Thomas M. Rose**

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record